# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **COREY ALEXANDER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4914**<br>**C/W: 17-5157, 17-9144**<br>**RE: 17-4914, 17-9144** |
| **CHS INC OF MINNESOTA** | **SECTION: H (3)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 20). For the following reasons, the Motion is DENIED.

## BACKGROUND

This maritime action arises from a slip and fall that Plaintiff allegedly suffered working aboard Defendant's vessel. Plaintiff Corey Alexander was employed by Defendant CHS Inc. of Minnesota as a seaman assigned to the M/V ELIZABETH ANN, a vessel owned, operated, or controlled by Defendant. In order to obtain employment as a deckhand with Defendant, Plaintiff underwent a pre-employment physical at West Jefferson Industrial Clinic on

1

September 9, 2010.[1] As part of the exam, Plaintiff filled out a medical history questionnaire, circling "no" next to "Back injury (upper)" and "Back injury (lower)."[2] One week earlier, on September 2, 2010, Plaintiff had seen his personal physician, Doctor Candice Abuso, with a chief complaint of back pain.[3] Plaintiff reported to Dr. Abuso that he had been experiencing the pain intermittently for the previous three years, that the pain was aggravated by activity, that nothing relieved the pain, and that his last episode was three months before the visit.[4] Plaintiff now testifies that the back pain arose from a muscle sprain that Plaintiff suffered in his upper back in 2005.[5]

Plaintiff alleges that on April 7, 2016, he slipped and fell on hydraulic fluid that had leaked from a hydraulic line onto the M/V ELIZABETH ANN's stern deck, injuring his right knee and lower back. It is undisputed that Plaintiff immediately reported an injury, left the vessel, and received maintenance and cure from Defendant. Plaintiff returned to work on the M/V ELIZABETH ANN on July 18, 2016. Plaintiff alleges that on August 26, 2016 while working on the vessel, he was struck by a cable, injuring his lower back. At the time, Plaintiff said that he was fine and refused medical treatment.[6] Plaintiff continued to work for Defendant on the M/V ELIZABETH ANN.[7] Plaintiff first sought medical treatment relating to the August incident on December 5, 2016 and first obtained treatment on January 5, 2017.[8]

---

[1] Doc. 20-3 at 31.
[2] Doc. 20-3 at 31.
[3] Doc. 20-3 at 27.
[4] Doc. 20-3 at 27.
[5] Doc. 26-2 at 6–7, 72–73.
[6] Doc. 20-2 at 54–56.
[7] Doc 20-1 at 21–24.
[8] Doc. 20-2 at 25–26, 71. The earliest medical record from Dr. Laurie is dated January 5, 2017, but in Plaintiff's deposition, counsel for Defendant asked whether December 5, 2016 was the first time that Plaintiff sought treatment. Plaintiff agreed. *See* Doc. 20-1 at 25–26. There is no record of a December 5, 2016 interaction with Dr. Laurie.

On December 13, 2016, Plaintiff was rear-ended by another car while driving on the highway.[9] Plaintiff saw a doctor with Louisiana Primary Care Consultants ("LPCC") the next day, December 14, 2016, reporting injuries to his head, neck, shoulder, back, and hips.[10] The medical records from that day indicate that Plaintiff had no existing injuries to the affected areas, including his lower back.[11] The report mentions a "previous accident" three years prior with no injuries, but includes no mention of any other incidents in which Plaintiff sustained injury.[12] Plaintiff continued to receive treatment from LPCC on at least nine other occasions through October of 2017.[13] Plaintiff underwent a pre-employment physical examination by Pelican State Outpatient Center on December 28, 2016 at which he only reported that he was suffering from neck pain in connection with the December 2016 motor vehicle crash.[14] The same day, Plaintiff also was treated at LPCC and reported that he was experiencing significant lower back pain arising from the motor vehicle crash.[15] On December 4, 2017, Plaintiff filed a lawsuit in state court against the driver of the car that rear-ended him seeking to recover damages for the resulting physical injuries.[16]

Plaintiff's first demand for maintenance and cure related to the August incident aboard the M/V ELIZABETH ANN was on March 29, 2017.[17] In connection with that incident, Defendant paid maintenance totaling $20,480.00 and cure totaling $21,064.54.[18] Defendant denied further cure on

---

[9] Doc. 20-2 at 13–14, 62–67.
[10] Doc. 20-2 at 76.
[11] Doc. 20-2 at 83.
[12] *See* Doc. 20-2 at 83.
[13] *See* Doc. 20-2 at 76–93.
[14] Docs. 20-2 at 100–101; 20-3 at 1–2.
[15] Doc. 20-2 at 86.
[16] Doc. 20-3 at 6–10.
[17] Doc. 20-3 at 65.
[18] Doc. 20-3 at 11–12.

the basis of the *McCorpen* defense and because it believed that Plaintiff had failed to produce credible evidence that his condition was caused by the August 2016 incident.

Plaintiff filed this suit on May 12, 2017, asserting claims for Jones Act negligence, unseaworthiness, maintenance and cure under the general maritime law, and punitive damages for the alleged failure to pay maintenance and cure. On September 15, 2017, Defendant filed a complaint for exoneration and limitation of liability under Rule 9(h) of the Federal Rules of Civil Procedure and Rule F of the Supplemental Rules of Admiralty and Maritime Claims. Defendant now moves for summary judgment dismissing Plaintiff's claims. Plaintiff opposes the Motion.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[20]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[21] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[19] FED. R. CIV. P. 56 (2012).
[20] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[21] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).

4

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[22] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[23] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[24] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[25] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[26]

## LAW AND ANALYSIS

Defendant moves for summary judgment dismissing Plaintiff's claims for maintenance and cure, punitive damages, and Jones Act liability.

## I. The *McCorpen* Defense to Plaintiff's Claim for Maintenance and Cure

Defendant first moves for summary judgment dismissing Plaintiff's claim for maintenance and cure on the basis of the *McCorpen* defense. "Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel. The

---

[22] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[23] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[24] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[25] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[26] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

5

shipowner's obligation is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment."[27] One exception to the obligation is when the claimant intentionally concealed a pre-existing medical condition from his employer, known as the *McCorpen* defense.[28] A shipowner need not pay maintenance and cure if he can show that,

(1) the claimant intentionally misrepresented or concealed medical facts;

(2) the non-disclosed facts were material to the employer's decision to hire the claimant; and

(3) a connection exists between the withheld information and the injury complained of in the lawsuit.[29]

The intentional concealment prong does not require a finding of subjective intent; it is "an essentially objective inquiry."[30] "If . . . the vessel owner does require the seaman to submit to medical examination as part of its hiring process, a seaman who misrepresents or conceals any material medical facts, disclosure of which is plainly desired, risks forfeiture of his maintenance and cure benefits."[31] "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information" is sufficient to satisfy the first prong.[32] As to the second prong, "[t]he fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis."[33] And as to the third prong, the prior injury need not be identical to the

---

[27] McCorpen v. Cent. Gulf S. S. Corp., 396 F.2d 547, 548 (5th Cir. 1968).
[28] *See id.* at 548–49.
[29] Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005).
[30] *Id.* at 174.
[31] Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006).
[32] *Brown*, 410 F.3d at 174 (quoting Vitcovich v. Ocean Rover O.N., No. 94–35047, 1997 WL 21205, *3 (9th Cir. Jan. 14, 1997) (unpublished opinion)).
[33] *Id.* at 175.

complained-of injury, rather, the shipowner need only show a causal relationship between the two.[34]

Defendant argues that, by circling "no" next to the back injury questions on his pre-employment medical history questionnaire in 2010, Plaintiff concealed medical facts relevant to his employment and connected to his present injury, thereby entitling Defendant to the *McCorpen* defense. Under the strict standard of *Brown v. Parker Drilling Offshore Corp.*, Defendant has established prongs one and two as a matter of law.[35] However, there is a question of material fact as to the third prong, whether Plaintiff's preexisting injury is sufficiently connected to the injury complained of in this lawsuit. To satisfy the third prong, courts require that the injuries at least be to the same part of the body and routinely consider the lower back or lumbar a specific body part.[36] Plaintiff testifies that the injury he reported to Dr. Abuso in 2010 was to his upper back. Defendants argue that Plaintiff is lying, but offer no evidence to support their theory that the injury was actually to Plaintiff's lower back. Regardless, issues of credibility are generally not appropriate for summary judgment. Accordingly, summary judgment on Defendant's *McCorpen* defense is denied.

## II. Medical Causation as to Plaintiff's Claims for Jones Act Negligence and Unseaworthiness

Defendant also moves for summary judgment dismissing Plaintiff's claims for Jones Act negligence and unseaworthiness on the ground that Plaintiff has failed to carry his burden to prove that his injuries were caused

---

[34] *Id.* at 176.
[35] *See id.* at 174–76.
[36] *See id.* at 176 (collecting cases); Carter v. Parker Towing Co., Inc., No. CV 17-2634, 2018 WL 2065577, at *6 (E.D. La. May 3, 2018) (Knowles, M.J.); Johnson v. Cenac Towing, Inc., 599 F. Supp. 2d 721, 729 (E.D. La. 2009) (Vance, J.) (collecting cases).

7

by the August 2016 incident aboard the M/V ELIZABETH ANN. "A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury."[37] The negligence need only "play[] any part, even the slightest, in producing the injury or death for which damages are sought" in order for the employer to be liable.[38] Even so, the negligence must rise beyond mere but for causation and be a legal cause of the injury.[39] A plaintiff asserting a claim for unseaworthiness must also prove causation, though to a more demanding standard.[40] The plaintiff must prove that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness."[41] Defendant argues for summary judgment based on an evidentiary standard set forth by the Sixth Circuit. There, summary judgment in favor of an employer is appropriate when the plaintiff cannot produce at least "a medical expert . . . able to articulate that there is more than a mere possibility that a causal relationship exists between the defendant's negligence and the injury for which the plaintiff seeks damages."[42]

Plaintiff has met even the Sixth Circuit's standard. Plaintiff's treating physician, Dr. Thomas, opines that Plaintiff's injuries to his lower back and the resulting need for a fusion were caused by his August 2016 fall. After being presented with evidence of the car crash that Plaintiff suffered in December

---

[37] Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997).
[38] *Id.* (quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506 (1957)).
[39] Johnson v. Cenac Towing, Inc., 544 F.3d 296, 302 (5th Cir. 2008).
[40] *See* Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992).
[41] *Id.* (quoting Johnson v. Offshore Exp., Inc., 845 F.2d 1347, 1354 (5th Cir. 1988)).
[42] Mayhew v. Bell S.S. Co., 917 F.2d 961, 963 (6th Cir. 1990); *see also* Johnson v. Horizon Offshore Contractors, Inc., No. CIV.A. 06-10689, 2008 WL 916256, at *4 (E.D. La. Mar. 31, 2008) (applying the *Mayhew* rule); Ginther v. Sea Support Servs. L.L.C., No. 00-2928, 2001 WL 1602154, at *3 (E.D. La. Dec. 12, 2001) (same).

2016, Dr. Thomas concluded that the crash aggravated the injuries that Plaintiff sustained in the fall on the M/V ELIZABETH ANN.[43] Plaintiff has therefore submitted evidence from a medical expert that his injuries were caused by the incident on Defendant's vessel, meeting his burden. Defendant's arguments about Plaintiff's credibility, the extent of the injury caused by the fall as opposed to the crash, and the role of Plaintiff's preexisting disc degeneration are all issues for trial. They do not render Dr. Thomas's opinion meaningless as a matter of law. Accordingly, summary judgment that Plaintiff has failed to prove causation is denied.

## III. Evidence that Defendant was Arbitrary and Capricious in Denying Maintenance and Cure

Defendant also moves for summary judgment dismissing Plaintiff's claim for punitive damages resulting from the denial of maintenance and cure on the grounds that Plaintiff has failed to produce evidence that Defendant was arbitrary and capricious in its denial. A seaman may recover punitive damages under general maritime law "for the willful and wanton disregard of the maintenance and cure obligation."[44] Such conduct "requires an element of bad faith."[45] Courts have found employers liable for punitive damages based on their rejection of the opinions of treating physicians.[46] Furthermore, "[t]he Fifth Circuit has repeatedly held that conflicting diagnoses and prognoses from

---

[43] Doc. 26-2 at 2–4.

[44] Atl. Sounding Co. v. Townsend, 557 U.S. 404, 424 (2009).

[45] Harper v. Zapata Off-Shore Co., 741 F.2d 87, 90 (5th Cir. 1984); *see also* Nelon v. Cenac Towing Co., LLC, No. 10-373, 2011 WL 289040, at *22 (E.D. La. Jan. 25, 2011) (Fallon, J.) (reasoning that in the wake of *Atlantic Sounding Co.*, the Fifth Circuit's jurisprudence preceding *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1513 (5th Cir. 1995), is restored).

[46] *See, e.g.*, Weeks Marine, Inc. v. Watson, 190 F. Supp. 3d 588, 597 (E.D. La. 2016) (Barbier, J.).

9

various physicians present a question of fact as to . . . whether an employer's termination of maintenance and cure benefits was arbitrary or capricious."[47]

Here, Defendant relied on its own medical experts to contradict the opinions of Plaintiff's treating physicians and deny Plaintiff maintenance and cure. Although the Court is mindful of the inconsistencies that Defendant points out in Plaintiff's stories, this Court finds that there is sufficient evidence in the record for a trier of fact to find that Defendant was arbitrary or capricious in doing so.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana this 24th day of July, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[47] Rowan v. Chem Carrier Towing, LLC, No. CIV.A. 12-712, 2015 WL 2097572, at *6 (E.D. La. May 5, 2015) (Vance, J.).